IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JOSEPH V. MARTINEZ,

      Plaintiff,

vs.                                                  No. 1:20-CV-00877-KRS

KILOLO KIJAKAZI, Acting Commissioner
of the Social Security Administration,[1]

      Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court upon Plaintiff's Motion to Reverse and Remand for a Rehearing with Supportive Memorandum (Doc. 21), dated June 28, 2021, challenging the determination of the Commissioner of the Social Security Administration ("SSA") that Martinez is not entitled to disability insurance benefits under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 401-34, 1381-83f. The Commissioner responded to Martinez's motion on September 26, 2021 (Doc. 25), and Martinez filed a reply brief on October 11, 2021 (Doc. 26). With the consent of the parties to conduct dispositive proceedings in this matter, *see* 28 U.S.C. § 636(c); FED. R. CIV. P. 73(b), the Court has considered the parties' filings and has thoroughly reviewed the administrative record. Having done so, the Court concludes that the ALJ erred in his decision and will therefore GRANT Martinez's motion and remand this case back to the SSA for proceedings consistent with this opinion.

### I. PROCEDURAL POSTURE

On November 17, 2014, Martinez filed an initial application for disability insurance benefits and protectively filed an application for supplemental security income. (*See*

---

[1] The Acting Commissioner is substituted as the proper Defendant pursuant to FED. R. CIV. P. 25(d).

Administrative Record ("AR") at 149-50). Martinez alleged that he had become disabled on August 26, 2014, due to neck and back injuries, left knee injury, and anxiety. (*Id.* at 115, 132). His application was denied at the initial level on March 3, 2015 (*id.* at 149-50), and at the reconsideration level on December 28, 2015 (*id.* at 151-52).

After conducting a hearing on July 18, 2017, ALJ Lillian Richter issued a decision finding that Martinez was not disabled under the relevant sections of the Social Security Act. (*Id.* at 190-202). However, in a decision dated December 13, 2018, the Appeals Council granted Martinez's request for review and remanded the matter to the ALJ, directing her to proffer all post-hearing evidence to Martinez as required by SSA policy. (*Id.* at 212-13). Following remand, the ALJ held a second hearing on December 5, 2019. (*Id.* at 39-78). Martinez was represented by counsel and testified at the hearing, as did a vocational expert. (*See id.*).

On March 9, 2020, the ALJ issued her decision, again finding that Martinez was not disabled under the Social Security Act. (*Id.* at 12-27). Martinez again requested review by the Appeals Council (*id.* at 385-87), but the Appeals Council denied this request on June 29, 2020 (*id.* at 1-3), which made the ALJ's decision the final decision of the Commissioner. On August 28, 2020, Martinez filed the complaint in this case seeking review of the Commissioner's decision. (Doc. 1).

## II. LEGAL STANDARDS

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining "whether substantial evidence supports the factual findings and whether the ALJ applied the correct legal standards." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016); *see also* 42 U.S.C. § 405(g). If substantial evidence supports the ALJ's findings and the correct legal standards were applied,

the Commissioner's decision stands, and the plaintiff is not entitled to relief. *See, e.g.*, *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). Although a court must meticulously review the entire record, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *See, e.g.*, *id.* (quotation omitted).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation omitted); *Langley*, 373 F.3d at 1118 (quotation omitted). Although this threshold is "not high," evidence is not substantial if it is "a mere scintilla," *Biestek*, 139 S. Ct. at 1154 (quotation omitted); "if it is overwhelmed by other evidence in the record," *Langley*, 373 F.3d at 1118; or if it "constitutes mere conclusion," *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005) (quotation omitted). Thus, the Court must examine the record as a whole, "including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan*, 399 F.3d at 1262. While an ALJ need not discuss every piece of evidence, "[t]he record must demonstrate that the ALJ considered all of the evidence," and "a minimal level of articulation of the ALJ's assessment of the evidence is required in cases in which considerable evidence is presented to counter the agency's position." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). "Failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984) (quotation omitted).

**B.  Disability Framework**

"Disability," as defined by the Social Security Act, is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to

last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The SSA has devised a five-step sequential evaluation process to determine disability. *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); *Wall v. Astrue*, 561 F.3d 1048, 1051-52 (10th Cir. 2009); 20 C.F.R. §§ 404.1520, 416.920. If a finding of disability or non-disability is directed at any point, the SSA will not proceed through the remaining steps. *Thomas*, 540 U.S. at 24. At the first three steps, the ALJ considers the claimant's current work activity and the severity of his impairment or combination of impairments. *See id.* at 24-25. If no finding is directed after the third step, the Commissioner must determine the claimant's residual functional capacity ("RFC"), or the most that he is able to do despite his limitations. *See* 20 C.F.R. §§ 404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1). At step four, the claimant must prove that, based on his RFC, he is unable to perform the work he has done in the past. *See Thomas*, 540 U.S. at 25. At the final step, the burden shifts to the Commissioner to determine whether, considering the claimant's vocational factors, he is capable of performing other jobs existing in significant numbers in the national economy. *See id.*; *see also Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (discussing the five-step sequential evaluation process in detail).

### III.  THE ALJ'S 2020 DETERMINATION

The ALJ reviewed Martinez's claim pursuant to the five-step sequential evaluation process. (AR at 13-14). First, the ALJ found that Martinez met the insured status requirement through September 30, 2018, and had not engaged in substantial gainful activity since prior to his alleged onset date. (*Id.*). The ALJ then found at step two that Martinez suffered from multiple nonsevere impairments, as well as the following severe impairments: degenerative joint disease of the bilateral knees (status post left knee arthroscopy); degenerative joint disease of the right hand; obesity; degenerative disc disease of the lumbar spine, with lumbago, sciatica, multilevel

spondylosis of the lumbar spine, and lumbar spinal stenosis; degenerative disc disease of the cervical spine (status post remote cervical fusion), with cervical fusion syndrome, cervical spinal stenosis, neural foraminal narrowing, and radiculopathy; paresthesia of the right arm; chronic pain syndrome; an unspecified neurocognitive disorder; mood disorder with depression; generalized anxiety disorder; and somatic symptom disorder. (*Id.* at 14-15).

At step three, the ALJ concluded that Martinez did not have an impairment or combination of impairments that met the criteria of listed impairments under Appendix 1 of the SSA's regulations. (*See id.* at 15-19). In so holding, the ALJ found that Martinez possessed only mild or moderate limitations in the four broad areas of mental functioning, meaning he did not satisfy the "paragraph B" criteria of the relevant listings under Appendix 1 § 12.00, and that the record also did not establish satisfaction of the "paragraph C" criteria of the relevant listings. (*See id.* at 16-19).

Proceeding to the next step, the ALJ reviewed the evidence of record, including statements and other medical evidence from treating, consulting, and nonexamining medical sources, as well as Martinez's own subjective symptom evidence. (*See id.* at 19-25). In doing so, the ALJ determined among other things that the opinions of consultative psychological examiner Robert Krueger, Ph.D., were entitled to only "some" weight. (*See id.* at 24-25). Based on her review of the evidence, the ALJ concluded that Martinez possessed an RFC to perform light work with additional exertional and nonexertional modifications. (*See id.* at 19). The ALJ then determined that Martinez had no past relevant work, ending the step-four inquiry. (*See id.* at 25).

Moving to step five, the ALJ determined that Martinez was able to perform jobs existing in significant numbers in the national economy. (*See id.* at 26-27). The ALJ therefore concluded

that Martinez was not precluded from working by his RFC and that he was not disabled. (*See id.* at 27).

### IV. DISCUSSION

Martinez challenges the ALJ's assessment of opinion evidence from Dr. Krueger (Doc. 21 at 11-20) and her analysis with respect to Martinez's allegations of knee, back, and neck pain when formulating his RFC (*id.* at 20-26). Although the ALJ's evaluation of Dr. Krueger's opinions followed the applicable legal standards and was supported by substantial evidence as described herein, the Court finds that remand is required so that the ALJ may properly address the probative evidence relating to Martinez's allegations of disabling pain.

#### A. Evaluation of Dr. Krueger's Opinions

Dr. Krueger performed a consultative psychological evaluation of Martinez on August 17, 2018, and issued a report on his findings two days later. (AR at 1401-14). Among other things, Dr. Krueger concluded from his review that Martinez possessed largely moderate limitations in understanding and remembering and in social interaction, as well as largely marked limitations in sustained concentration and persistence and in adaptation. (*See id.* at 1411-12). While the ALJ concluded that Dr. Krueger's assessment of moderate limitations was consistent with the evidentiary record, she determined that his findings of marked limitations in any area and greater than mild limitations in adaptive functioning were inconsistent with record evidence. (*See id.* at 24-25). The ALJ therefore concluded that Dr. Krueger's evaluation was only entitled to "some" weight. (*See id.*). Martinez challenges this conclusion. (*See* Doc. 21 at 11-20).

When weighing medical opinions provided by a medical source such as a consultative examiner, the ALJ must consider multiple factors, including the extent to which the source's opinions are supported by relevant evidence and the consistency of the medical

opinion with the record. *See* 20 C.F.R. § 404.1527(c)(3)-(4).[2] When addressing any of these factors, the ALJ must discuss not only "the evidence supporting his decision," but also "the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). "It is improper for the ALJ to pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence." *Carpenter v. Astrue*, 537 F.3d 1264, 1265 (10th Cir. 2008) (quotation omitted). Moreover, the ALJ may not "mischaracterize or downplay evidence to support her findings." *Bryant v. Comm'r, SSA*, 753 F. App'x 637, 641 (10th Cir. 2018) (unpublished) (citing *Talbot v. Heckler*, 814 F.2d 1456, 1463-64 (10th Cir. 1987)).[3] Rather, an ALJ must provide "appropriate explanations for accepting or rejecting" medical opinions. *See* Social Security Ruling ("SSR") 96-5p, 1996 WL 374183, at *5 (July 2, 1996).[4]

While mental status examination (MSE) findings are not necessarily dispositive to the supportability of a medical opinion concerning a claimant's overall mental functioning, it is proper for an ALJ to consider such findings as part of her analysis of opinion evidence. *See, e.g.*, *Casas v. Saul*, 1:19-cv-01154 KRS, 2021 WL 107244, at *5 (D.N.M. Jan. 12, 2021) (citations omitted); *see also Sherman v. Kijakazi*, No. 1:20-cv-00887 KRS, 2021 WL 5505525, at *7 (D.N.M. Nov. 24, 2021) (citing 20 C.F.R. §§ 404.1502(f)-(g), .1527(c)(3)) (discussing

---

[2] Martinez's claims were filed before March 27, 2017, meaning that the new regulations concerning the handling of medical opinion evidence found at 20 C.F.R. § 404.1520c and 20 C.F.R. § 404.920c do not apply to this proceeding. Although Martinez applied for benefits under both Title II and Title XVI, the Court hereinafter cites only to the regulations promulgated under Title II and does not also cite to the parallel regulations under Title XVI.

[3] The Court cites *Bryant*, other unpublished decisions of the Tenth Circuit, and the district court decisions referenced in this opinion for their persuasive value unless otherwise stated.

[4] SSRs are binding on the SSA, and while they do not have the force of law, courts traditionally defer to SSRs since they constitute the agency's interpretation of its own regulations and foundational statutes. *See Sullivan v. Zebley*, 493 U.S. 521, 531 n.9 (1990); 20 C.F.R. § 402.35; *see also Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1051 (10th Cir. 1993) (SSRs entitled to deference). Although SSR 96-5p has been rescinded for claims filed on or after March 27, 2017, *see* SSR 96-2p, 2017 WL 3928298, at *1 (Mar. 27, 2017), that guidance remains entitled to deference here because Martinez's claims were filed before that date.

consideration of MSE findings). Here, although the ALJ cited a discrepancy between Martinez's "generally unremarkable mental status examination and [Dr. Krueger's] assessment of marked limitations" (AR at 24), Martinez argues that this discussion omitted mention of certain other mental status examination findings, including observations of "somewhat disheveled grooming, slow gait, [and] depressed, anxious, and stressed appearance" (Doc. 21 at 13). But as the Commissioner notes, the ALJ discussed these very MSE findings elsewhere in her decision. (AR at 22); *see, e.g.*, *Endriss v. Astrue*, 506 F. App'x 772, 777 (10th Cir. 2012) (unpublished) ("The ALJ set forth a summary of the relevant objective medical evidence earlier in his decision and he is not required to continue to recite the same evidence again in rejecting [a medical source's] opinion."). The ALJ was entitled to consider the degree to which the MSE findings supported Dr. Krueger's opinions, *see* 20 C.F.R. § 404.1527(c)(3), and the Court can follow the ALJ's chain of analysis when she concludes that this evidence supported a finding of no more than mild or moderate limitations in any area of mental functioning, *see, e.g.*, *Endriss*, 506 F. App'x at 778 (quoting SSR 06-03p, 2006 WL 2329939, at *5 (Aug. 9, 2006)) (finding no error where "there is sufficient information here for 'a subsequent reviewer to follow the adjudicator's reasoning'"). To the extent that these particular MSE findings constitute significantly probative evidence that might weigh against the ALJ's assessment, the Court finds that the ALJ adequately addressed those findings.

     Relatedly, Martinez faults the ALJ for citing to records of "non-mental health appointments as support for" her weighting of Dr. Krueger's report. (Doc. 21 at 16) (citing AR at 25). However, the records in question contain objective observations concerning Martinez's neurological and/or psychological condition at each appointment. (*See* AR at 650, 715, 823, 887, 924). Again, the ALJ was entitled to consider these matters when assessing Dr. Krueger's

evaluation. *See, e.g.*, *Casas,* 2021 WL 107244, at *5. Although Martinez cites *Stonestreet v. Saul*, No. 19-cv-00230 KK, 2020 WL 1049349 (D.N.M. Mar. 4, 2020); (*see* Doc. 26 at 5-6), as apparently supporting the "new proposition that an ALJ may not consider treatment notes from providers who saw a claimant for physical symptoms in evaluating the opinion of an examining physician who opined on the claimant's mental health," the Court agrees with the conclusion of United States Magistrate Judge Gregory J. Fouratt that *Stonestreet* is better understood "merely to have applied the familiar rule that an ALJ is not permitted to pick and choose evidence, taking only the parts that are favorable to a finding of nondisability." *Linam v. Kijakazi*, No. 20-cv-00063 GJF, 20201 WL 3542661, at *6 (D.N.M. Aug. 11, 2021). Here, in contrast to *Stonestreet*, Martinez does not show that the ALJ picked and chose among these "non-mental health" records to record only those findings that supported her conclusions regarding Dr. Krueger's opinions. *See id.* (noting that "ALJ acknowledged records documenting" claimant's symptoms).

Martinez also argues that the ALJ failed to adequately address clinical diagnostic testing in the form of a Wide Range Achievement Test-Revised (WRAT-R), in which Dr. Krueger found "mild difficulties with word recognitions skills" and an eighth-grade reading level, as well as a Wechsler Adult Intelligence Scale-Fourth Edition (WAIS-IV), in which he recorded largely moderate impairments. (*See* AR at 1405). On its face, this would not seem to be a viable argument: the ALJ acknowledged that the standardized testing performed by Dr. Krueger and seemed to accept that the results supported his assessment to some degree. (*See id.* at 24) (stating that Dr. Krueger "supported his assessment with . . . standardized testing"). However, Martinez appears to premise her argument on the understanding that the ALJ effectively rejected several of Dr. Krueger's findings of moderate limitations by failing to incorporate certain restrictions into his RFC. (*See* Doc. 21 at 14-15). In other words, Martinez's argument has two facets: first, if the

9

ALJ *accepted* Dr. Krueger's assessment of certain moderate limitations, she erred by failing to incorporate those limitations in Martinez's RFC; second, if the ALJ *rejected* Dr. Krueger's assessment of moderate limitations, she was required to more thoroughly address certain WRAT-R and/or WAIS-IV results that were allegedly "link[ed]" to those findings. (*See id.*); (*see also* Doc. 26 at 4) ("[I]f ALJ Richter believed Dr. Krueger's moderate findings were supported by testing, then why did she omit any explanation of the moderate limitations she excluded from the RFC[?]").

Dr. Krueger determined that Martinez was moderately impaired in his ability to understand and remember very short and simple instructions (*see* AR at 1411), to carry out those instructions (*see id.*), to make simple work-related decisions (*see id.*), and to maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness (*see id.* at 1412). The ALJ, citing to the assessment form in which Dr. Krueger included these determinations, approvingly noted that the provider's "assessment of moderate limitations in cognitive and social functioning" were supported by the record. (*id.* at 24) (citing, *e.g.*, *id.* at 1411-12). However, there is a difference between an ALJ's acceptance of a provider's findings of moderate limitations at the functional-category level—a determination that goes to step three of the sequential evaluation process—and her consideration of that provider's findings of specific work-related functional limitations for purposes of determining an RFC. Put more simply, the fact that the ALJ agreed that there was evidence supporting a provider's assessment of moderate limitations in a functional category does not necessarily mean that she agreed with that provider's assessment of moderate limitations in every work-related ability within that category. *See, e.g.*, *Vigil v. Colvin*, 805 F.3d 1199, 1203 (10th Cir. 2015) ("The ALJ's finding of a moderate limitation in concentration, persistence, or pace at step three does not necessarily

translate to a work-related functional limitation for the purposes of the RFC assessment."). Here, the ALJ did not make any specific findings as to Martinez's abilities to handle simple work-related decisions or instructions or his ability to maintain behavioral or cleanliness standards, meaning there is no indication that the ALJ accepted Dr. Krueger's opinion that Martinez was moderately limited in those individual abilities.[5] Therefore, even if the ALJ were required to map each of Martinez's work-related limitations to her findings of particular RFC restrictions, the Court does not find that the ALJ erred in leaving out restrictions relevant to the specified abilities.

Moreover, accepting that the ALJ rejected Dr. Krueger's findings as to those limitations, she did not err in failing to more thoroughly address the WRAT-R or WAIS-IV results. The ALJ was responsible for weighing *all* of the evidence before her when evaluating Dr. Krueger's opinions; the clinical results alone did not require her to adopt Dr. Krueger's findings as to Martinez's limitations where she concluded that other substantial evidence in the record supported a finding of lesser limitations. *See, e.g.*, *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004) (describing substantial-evidence standard); *see also Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004) ("In determining whether substantial evidence exists to support the ALJ's decision, [courts] will not reweigh the evidence."). Instead, the ALJ's duty was to discuss significantly probative evidence that weighed against her decision while also setting forth substantial evidence that nonetheless supported her decision. *See Clifton*, 79 F.3d at 1009-10. Here, the ALJ acknowledged and discussed the clinical diagnostic results at issue, and she conceded that Dr. Krueger supported his findings on limitations by reference to those results.

---

[5] If anything, the ALJ's decision could be read as expressly rejecting a finding of limitations in some of these abilities. (*See, e.g.*, AR at 16, 17, 22) (citations omitted) (noting Martinez's reports that he could, *e.g.*, follow instructions).

11

(*See* AR at 24); (*see id.* at 16) (citing Exhibit "51F, p. 5-6," AR at 1404-05) (describing at step three how these and other records supported a finding of limitations in understanding, remembering, and applying information). She then explained her reasons for concluding that, notwithstanding those results, other substantial evidence undermined his findings. (*See id.* at 24). That is all she was required to do.

Martinez next points to two alleged errors by the ALJ with respect to evidence purportedly supporting Dr. Krueger's opinions. He first asserts that the ALJ failed to cite "mental health evidence" in the form of letters from his therapist. (*See* Doc. 21 at 16-17) (citing AR at 806, 872, 1308). But Martinez is mistaken; the ALJ discussed the letters from his therapist, and she explained that she found them to be unhelpful and unpersuasive due to a lack of functional assessments, the infrequency of Martinez's visits with the therapist, and the amount of time that had passed between those visits and the writing of the letters. (*See* AR at 24) (citations omitted). And although Martinez cites a report from Michael Gzaskow, M.D., who expressed certain opinions as to Martinez's diagnoses and limitations (Doc. 21 at 17) (citing, *e.g.*, AR at 621-22), he does not adequately explain why further discussion of that report was necessary with respect to the evaluation of Dr. Krueger's opinions. Dr. Gzaskow's diagnoses of various mental conditions appear to be consistent with the severe mental impairments identified by the ALJ at step two (*see* AR at 15), and it does not appear that the severity of limitations he identified (*see id.* at 622) exceeded the findings of Dr. Krueger that the ALJ found to be persuasive (*see id.* at 24). Because Martinez has not established that the ALJ rejected Dr. Gzaskow's relevant findings, the Court does not find that the ALJ erred in failing to discuss those findings in more detail when addressing the consistency of Dr. Krueger's report with the record. *Cf. Clifton*, 79 F.3d at 1009-10 ("[A]n ALJ is not required to discuss every piece of evidence.").

For a similar reason, the Court dismisses Martinez's final claim of error as to Dr. Krueger's opinions. In rejecting Dr. Krueger's finding of marked limitations in concentration, persistence, and pace, the ALJ cited to a July 2015 claimant function report to find that Martinez himself "did not identify any mental limitations." (AR at 25). As Martinez accurately argues, this is a mischaracterization of the record; not only did he report mental limitations interfering with his performance of daily activities in that same document (*see id.* at 473, 479) (claiming feelings of worthlessness and trouble getting along with authority figures), he also identified additional limitations in an earlier function report (*see id.* at 453, 457-58) (noting, *e.g.*, problems with completing tasks) and in a November 2016 letter (*see id.* at 510) (describing a "very depressing" life and worsening anxiety). Additionally, Martinez testified about the degree to which his anxiety, panic attacks, and depression interfere with his functioning. (*See, e.g., id.* at 57, 66). The ALJ did not address these aspects of the record in her decision. However, while these statements illustrate that Martinez does in fact suffer from *some* degree of limitations in sustaining concentration, persistence, and pace, this fact is not disputed; the ALJ found that Martinez possessed moderate limitations in those abilities at steps three and four. (*See* AR at 17, 25); *see also Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) ("[A] moderate impairment is not the same as no impairment at all."). On their face, it is not clear that these statements support Dr. Krueger's finding of *marked* limitations in those abilities,[6] meaning it is not clear that the cited

---

[6] In regulations applicable at the time that Martinez filed his claim, a "marked" impairment in concentration, persistence, or pace meant that a claimant could not "complete these tasks without extra supervision or assistance, or in accordance with quality and accuracy standards, or at a consistent pace without an unreasonable number and length of rest periods, or without undue interruptions or distractions." *See, e.g.*, 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.00(C)(3) (2014). A person with a marked limitation in that area of functioning could "have difficulty with complicated tasks" but nonetheless "be able to sustain attention and persist at simple tasks." *See id.* Although the materials cited by Martinez describe difficulties with concentration, persistence, and pace, the Court does not see in this testimony any indication of limitations that rise to a marked level of impairment. Nor does Martinez elaborate upon why a contrary finding is warranted. Therefore, assuming that the ALJ erred in failing to discuss the cited testimony, the Court finds that the error was harmless. *See, e.g., Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir.

evidence constitutes "significantly probative evidence" that the ALJ rejected. *See Clifton*, 79 F.3d at 1010. Without more, the Court cannot find that the ALJ failed to follow controlling legal standards in assessing Dr. Krueger's opinions on this basis.

Martinez has failed to show any prejudicial error in the ALJ's consideration of Dr. Krueger's report. The Court will not direct remand on this ground.

### B. Evaluation of RFC

Martinez next argues that the ALJ failed to adequately account for his subjective allegations of musculoskeletal pain when formulating his RFC. (*See* Doc. 21 at 20-26). The Commissioner asserts in response that the ALJ's evaluation of Martinez's pain allegations was consistent with the applicable regulations and SSA guidance. (*See* Doc. 25 at 18-24).

A three-step analysis governs claims of a pain-producing impairment. *See Luna v. Bowen*, 834 F.2d 161, 163 (10th Cir. 1987). Under this standard, "an ALJ faced with a claim of disabling pain is required to consider and determine (1) whether the claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether the impairment is reasonably expected to produce some pain of the sort alleged . . . ; and (3) if so, whether, considering all the evidence, both objective and subjective, the claimant's pain was in fact disabling." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166-67 (10th Cir. 2012) (citing *Luna*, 834 F.2d at 163–64). In evaluating these factors, the ALJ should consider "items as 'a claimant's persistent attempts to find relief for her pain and her willingness to try any treatment prescribed, regular use of crutches or a cane, regular contact with a doctor, and the possibility that psychological disorders combine with physical problems' and 'the claimant's daily activities, and the dosage, effectiveness, and side effects of medication.'" *Id.* (citing *Luna*, 834 F.2d at 165-66);

---

2004) (finding errors to be harmless where reviewing court "could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way").

*see also Thompson v. Sullivan*, 987 F.2d 1482, 1489 (10th Cir. 1993) (quotation omitted) (listing other factors ALJ should consider). "But so long as the ALJ 'sets forth the specific evidence he relies on in evaluating the claimant's credibility,' he need not make a 'formalistic factor-by-factor recitation of the evidence.' . . . Common sense, not technical perfection, is our guide." *Keyes-Zachary*, 695 F.3d at 1167 (citation omitted) (cleaned up).

Although Martinez at times argues that the evidence cited by the ALJ could be construed as "actually support[ing]" his claims of disabling pain (*see, e.g.*, Doc. 21 at 22), this argument on its own is unavailing. Absent a failure to follow controlling legal standards, an ALJ's resolution of conflicting evidence will not be disturbed if substantial evidence supported her determination. *See, e.g.*, *Howard*, 379 F.3d at 947. The Court therefore turns to the more specific arguments that Martinez raises as to the ALJ's consideration of his allegations of knee, back, and neck pain.

1. *Knee Pain*

In discussing Martinez's reports of knee pain, the ALJ noted that Martinez had told a consultative examiner in 2015 that he "could complete activities of daily living and go on walks." (*See* AR at 20) (citing Exhibit "11F, p. 3"). Martinez states that the ALJ "mischaracterized" his statement, at least as to his walking abilities, because he only reported being able to walk 200 yards in that visit. (*See* Doc. 21 at 22) (citing AR at 629). Notably, the record also includes 2017 testimony from Martinez that he "tr[ies] to do a lot of walking now" and can walk "maybe half a mile" before his knee bothers him (*see* AR at 103), a 2017 report to a provider that he was "able to walk several miles daily" (*see id.* at 1100); (*see also id.* at 24) (citing "Exhibit[] 44F/25"), and other indications that Martinez was not as limited in his ability to walk as alleged. Although the ALJ acknowledged that Martinez disputed some of these reports (*see id.* at 20) (citing *id.* at 72) (noting Martinez's testimony that he can only walk for about ten

minutes), substantial evidence supported her characterization of his walking ability. The Court finds no error here.

Martinez further contends that the ALJ cherry-picked from the record, arguing that the medical evidence cited by the ALJ in fact portrays "a confusing mix of direct reports of pain . . . and imaging results that also show abnormalities." (*See* Doc. 21 at 22); (*see also, e.g.*, Doc. 26 at 8) (asserting ALJ "impermissibly picked and chose findings amongst the medical evidence"). While Martinez might characterize this evidence as "confusing," it was the ALJ's prerogative to weigh the record before her and come to a conclusion as to whether substantial evidence supported a finding of disabling pain. *See, e.g.*, *Allman v. Colvin*, 813 F.3d 1326, 1333 (10th Cir. 2016) (citing *Haga*, 482 F.3d at 1208) ("The ALJ was entitled to resolve such evidentiary conflicts and did so."). To the extent that Martinez suggests that the ALJ failed to properly address certain findings from the evidence that she cited, he does not adequately elaborate on this argument. In her decision, the ALJ highlighted medical evidence—including records cited by Martinez (*see* Doc. 21 at 22)—that arguably supported a finding of knee-related limitations while also pointing out evidence suggesting that these limitations were not as severe as alleged. (*See* AR at 20-21).[7] Without more, the Court can discern no error in the ALJ's discussion of the evidence concerning his allegations of knee pain.

### 2. Back Pain

In discussing Martinez's allegations of back pain, the ALJ recounted medical evidence concerning degenerative disc disease and other medical conditions affecting the lumbar spine.

---

[7] Martinez cites to certain testimony and notations in the evidentiary record concerning his knee pain, but he does not specifically argue that the ALJ erred in her consideration of that evidence. (*See* AR at 21). To the extent that Martinez intends to argue as much, he has not demonstrated that the evidence was "significantly probative" in light of the ALJ's otherwise extensive consideration of the record, that the ALJ in fact "rejected" such evidence given her finding of moderate impairments and RFC restrictions, or that the ALJ inadequately addressed this evidence. *Cf. Clifton*, 79 F.3d at 1010.

(*See* AR at 21). However, she also pointed to evidence showing "no surgical recommendations, effective pain treatment, intact motor function, . . . no assistive devices[,] . . . independent gait, full range of motion, . . . no significant side effects or associated complications with treatment," and evidence that "with treatment [Martinez's] back pain is 'well controlled.'" (*See id.*). From this, the ALJ concluded that Martinez's back pain was not disabling. (*See id.*).

Martinez argues (*see* Doc. 21 at 23-24) that the ALJ erred by failing to address relevant details, including:

> that his pain was about the same [during a June 2018 visit], radiating into his legs, and meloxicam was added for pain control; his pain was 8/10 and "utterly horrible" [on the same visit]; he was referred to a pain specialist to "explore interventions to control pain"; his pain medications were changed numerous times [including September, October, and December 2018, and August 2019]; his insurance stopped covering his injections; his medications made him too sedated and he could not function during the day; and he had increased pain with toe walking and difficulty sitting to standing.

(Doc. 21 at 23) (internal citations omitted). Further, although the ALJ cited certain medical records purporting to show that Martinez's pain was "well controlled" (*see* AR at 21) (citing *id.* at 904, 908), she did not discuss subsequent documentation of complaints that Martinez was suffering from worsening back pain and limited range of motion (*see id.* at 944-45).

As caselaw on the *Luna* factors illustrates, the foregoing are significant issues that an ALJ should consider when assessing a claimant's allegations of pain. *See, e.g., Keyes*, 695 F.3d at 1167 (quotation omitted) (noting ALJ's duty to consider, *e.g.*, "claimant's persistent attempts to find relief for h[er] pain" and "the dosage, effectiveness, and side effects of medication"); *Kepler*, 68 F.3d at 391 (quotation omitted) (requiring consideration of, *e.g.*, "levels of medication and their effectiveness, the extensiveness of the attempts . . . to obtain relief, [and] the frequency of medical contacts"). Several of these matters also directly contradict the ALJ's findings that Martinez had full range of motion, no significant side effects resulting from his medication, and

"well controlled" back pain. Accordingly, the ALJ's failure to discuss these matters—either to explain why the RFC adequately accounts for this record evidence or to explain why it was properly disregarded—was legal error. *See Clifton*, 79 F.3d at 1010.

The Commissioner's response on this point is insufficient. She does not assert that the issues raised by Martinez are not probative to the issue of his back pain, nor does she contend that the ALJ actually considered and relied upon those issues in formulating Martinez's RFC. Instead, the Commissioner appears to take the opposite position—that the ALJ not only rejected this evidence, but that in doing so she was excused from any obligation to address it. (*See* Doc. 25 at 22) (citing *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995)) (arguing that ALJ was "only require[d] [to] discuss the specific evidence she relied upon in evaluating the claimant's symptoms"). As Martinez notes, though, the Commissioner's proposed reading of *Kepler* is manifestly flawed: while that decision makes clear that an ALJ must engage in the *necessary* step of addressing the "specific evidence" she relies upon in assessing allegations of pain, the Tenth Circuit has never stated that such a step is *sufficient*. *See Kepler*, 68 F.3d at 391. In fact, *Kepler* itself makes clear that an ALJ commits reversible error where she fails to address "evidence that could be viewed as supporting [a] claimant's contention." *See id.* (requiring remand in part on this basis). In other words, the fact that the ALJ rejected the evidence cited by Martinez—a point implicitly conceded by the Commissioner—did not *relieve* her of the duty to discuss that evidence, as the Commissioner contends; it *imposed* that duty upon her.

Had the ALJ, in conformance with controlling legal standards, properly considered and addressed the probative evidence that she rejected, *see Clifton*, 79 F.3d at 1010, she might nonetheless have determined that Martinez's back pain is not disabling as alleged. The Court, however, cannot make this determination in the first instance. On remand, if the ALJ continues

to reject the evidence cited here by Martinez concerning the intensity, persistence, limiting effects, and potentially disabling nature of his back pain, she will explain her reasons for doing so. Alternatively, if the ALJ accepts this evidence but concludes that the symptoms described therein are adequately addressed by the RFC, she will explain why this is the case.

### 3. Neck Pain

The ALJ devoted more effort to discussing Martinez's cervical spine condition and related pain before concluding that these issues warranted a finding of no more than moderate limitations. (*See* AR at 22). In so concluding, the ALJ acknowledged that Martinez had already undergone cervical spinal fusion many years earlier and was scheduled for another surgical procedure in 2020; that a May 2019 MRI showed moderate multilevel degenerative disease, bilateral foraminal narrowing at C3-4, severe foraminal narrowing at C5-6, remodeling of the ventral surface cord, and other mild to moderate conditions; and that "physical examinations have shown tenderness to palpation of the cervical spine and trapezii, reduced range of motion of the cervical spine and left shoulder, reduced sensation at C6-7 nerve distribution, and diminished light touch to the bilateral hands." (*Id.*). Nevertheless, the ALJ cited "generally . . . effective pain management and intact motor function," "unremarkable gait," "no [spinal] cord signal abnormalities," "full range of motion, no tenderness, full strength, full sensation, and intact reflexes" to conclude that Martinez's neck pain was not disabling. (*See id.*).

As with his back pain, Martinez contends that the ALJ failed to discuss pertinent evidence and unduly focused on his gait. (*See* Doc. 21 at 24-25). In response, the Commissioner disputes Martinez's suggestion that his gait is not relevant to an assessment of his cervical spinal conditions and asserts that the ALJ properly addressed the evidence that he cites. (*See* Doc. 25 at 23-24). The Court agrees with the Commissioner that the ALJ did not err in considering

19

Martinez's gait when gauging his cervical spine pain (*see* AR at 22) and that the ALJ adequately discussed the evidence relating to his right upper extremity (*see id.* at 21). Moreover, the ALJ thoroughly addressed the findings of Martinez's providers following multiple MRIs, including findings of pain, diminished sensation, stenosis, foraminal encroachment and narrowing with cord contact, and a recommendation for surgery (*see id.* at 22)—the very issues that Martinez raises in his motion (*see* Doc. 21 at 24-25). The Court therefore finds that the ALJ sufficiently addressed the record pertaining to Martinez's allegations of neck pain and supported her relevant findings with substantial evidence.

### 4. *Summary*

The Court concludes that the ALJ followed controlling legal standards in evaluating Martinez's allegations of knee pain and cervical spine pain and that her findings on those issues were supported by substantial evidence. However, the ALJ failed to adequately address significantly probative evidence pertaining to Martinez's allegations of lumbar spine pain. On remand, the ALJ will address evidence probative to Martinez's allegations of back pain in conformance with governing legal standards as discussed herein.

### V. Conclusion

The ALJ erred in his review of Martinez's application for disability insurance benefits and supplemental security income. Accordingly, Martinez's Motion to Reverse and Remand for a Rehearing (Doc. 21) is **GRANTED**, and the Court remands this case back to the SSA for proceedings consistent with this opinion.

_____
**KEVIN R. SWEAZEA**
**UNITED STATES MAGISTRATE JUDGE**